JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

Maria Guijarro,

      Plaintiff,

      v.

Healthcare Services Group, Inc. et al.,

      Defendants

5:20-cv-00324-VAP-AFMx

## Order GRANTING Plaintiff's Motion to Remand (Dkt. 11)

Before the Court is Plaintiff Maria Guijarro's Motion to Remand Action to Superior Court, filed March 20, 2020. ("Motion," Dkt. 11). Defendants opposed the Motion on April 10, 2020, (Dkt. 14), and Plaintiff replied on April 16, 2020 (Dkt. 16).

After considering all papers filed in support of, and in opposition to, the Motion, the Court deems this matter appropriate for resolution without a hearing pursuant to Local Rule 7-15. The Court GRANTS the Motion and REMANDS the action to the California Superior Court for the County of San Bernardino.

## I. BACKGROUND

On December 10, 2019, Plaintiff Guijarro ("Plaintiff") filed her initial complaint against Defendants Healthcare Services Group, Inc., HCSG West

LLC, and Yolocare Inc., dba Terracina Post Acute (together, "Defendants") in San Bernardino Superior Court, alleging violations of various California Labor Codes. (*See generally* "Compl.," Dkt. 1-1, Ex. B).

In the Complaint, Plaintiff identifies as the putative class "[a]ll current and former non-exempt employees of Defendants who worked at any of Defendants' locations in the State of California at any time within the period beginning four (4) years prior to the filing of the this [*sic*] action, and ending at the time this action settles or proceeds to final judgment." (Compl. ¶ 5). Plaintiff alleges in the Complaint that Defendants engaged in various unlawful practices, including (1) failure to provide meal periods, (2) failure to provide rest periods, (3) failure to pay overtime wages, (4) failure to pay minimum wages, (5) failure to timely pay wages during employment, (6) failure to pay all wages due at termination, (7) failure to maintain payroll records, (8) failure to furnish accurate wage statements, (9) failure to indemnify employees for business expenses, and unfair business practices. (*See generally id.*).  Plaintiff also seeks penalties under the Private Attorneys General Act ("PAGA").  (*Id.* ¶¶ 62-66).

Based on these alleged violations, Plaintiff brought (1) a class action on behalf of those similarly situated, and (2) a representative action under the Private Attorneys General Act ("PAGA").  (*See id.* at ¶¶ 14-66).  Plaintiff served Defendants with the Complaint on December 12, 2019, (*see* "Notice of Removal," Dkt. 1 ¶ 1; Dkt. 1-1, Ex. B), and Defendants answered the Complaint on January 13, 2020.  (Dkt. 1-1, Ex. G).  On February 19, 2020, Defendants removed the instant action to this Court, claiming the Court had

United States District Court
Central District of California

1  jurisdiction under the Class Action Fairness Act (CAFA).  (*See generally*

2  Notice of Removal).

3

4  ## II.    LEGAL STANDARD

5  Removal jurisdiction is governed by statute.  *See* 28 U.S.C. §§ 1441 *et*

6  *seq.*; *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979)

7  ("The removal jurisdiction of the federal courts is derived entirely from the

8  statutory authorization of Congress" (citations omitted)).  Defendants may

9  remove a case to a federal court when a case originally filed in state court

10  presents a federal question or is between citizens of different states.  *See*

11  28 U.S.C. §§ 1441(a)-(b), 1446, 1453.  Only those state court actions that

12  originally could have been filed in federal court may be removed.  28 U.S.C.

13  § 1441(a); *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).

14

15  Although CAFA gives district courts diversity jurisdiction to hear class

16  actions, defendants must show that "any member of a class of plaintiffs is a

17  citizen of a State different from any defendant" (minimum diversity); the

18  number of members of the proposed plaintiff class exceeds 100 in the

19  aggregate (numerosity); and "the matter in controversy exceeds the sum or

20  value of $5,000,000, exclusive of interest and costs" (amount in

21  controversy).  28 U.S.C. § 1332(d); *see also Luther v. Countrywide Home*

22  *Loans Servicing LP*, 533 F.3d 1031, 1033-34 (9th Cir. 2008); *Serrano v. 180*

23  *Connect, Inc.*, 478 F.3d 1018, 1020-21 (9th Cir. 2007).

24

25  A defendant's notice of removal need include only a plausible allegation

26  that the amount in controversy exceeds the jurisdictional threshold.

Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88-89 (2014). When the removed complaint fails to allege a specific amount in controversy, or when the complaint alleges an amount in controversy less than the jurisdictional threshold, the removing defendant must prove by a preponderance of the evidence that the amount in controversy is greater than $5,000,000. *Rodriguez v. AT&T Mobility Servs.*, No. 13-56149, 2013 WL 4516757, at *6-7 (9th Cir. Aug. 27, 2013) (citing *Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1348 (2013)); *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) (citing *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007)). If a defendant fails to meet the requisite burden of proof, a court must remand for lack of subject matter jurisdiction.

In determining the amount in controversy, the Court considers not only the facts alleged in the complaint, taken as true for purposes of calculating the amount, but also "summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997). "[T]he amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis*, 627 F.3d at 400.

## III.   DISCUSSION

A defendant removing a case from state to federal court under CAFA faces a strong presumption against removal. *See Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 685 (9th Cir.2006) (listing cases); *Harris v.*

4

*Bankers Life & Cas. Co.*, 425 F.3d 689, 698 (9th Cir.2005) ("removal statutes should be construed narrowly in favor of remand to protect the jurisdiction of state courts.").

Here, Plaintiff contends removal is improper because (1) it was untimely, (2) even if the diversity requirement is satisfied, exceptions to CAFA's diversity requirement apply, and (3) Defendants failed to satisfy the amount-in-controversy requirement. (*See* Motion at 8, 9, 12).  As the removed complaint does not allege a specific amount in controversy, Defendant must prove by a preponderance of the evidence that the amount in controversy is greater than $5,000,000. *Rodriguez v. AT&T Mobility Servs.*, 2013 WL 4516757, at *6-7.  Below, the Court reviews each argument in turn.

### A.   Timeliness

Plaintiff argues that removal was untimely because Defendants were served on December 12, 2019, and did not file a notice of removal until February 21, 2020, 71 days later.  (Dkt. 11 at 7).  Although "[t]he removal statutes generally require a party to remove a case within 30 days of receiving the complaint, . . . the two 30–day periods are not the exclusive periods for removal." *Rea v. Michaels Stores Inc.*, 742 F.3d 1234, 1237-38 (9th Cir. 2014) (citing 28 U.S.C. § 1446, 1453(b).  "[A]s long as the complaint or 'an amended pleading, motion, order or other paper' does not reveal that the case is removable, the 30–day time period never starts to run and the defendant may remove at any time." *Id.* at 1238.

United States District Court
Central District of California

United States District Court
Central District of California

Although Plaintiff argues that "[i]t is clear from the face of the Complaint that removal would have been proper," and "no information was obtained by Defendant from Plaintiff that let them know removal is appropriate after they were served," Plaintiff provides little support for this statement.  (Dkt. 11 at 8).  Indeed, Plaintiff included no information in her Complaint regarding the size of the putative class, nor did she specify the damages at issue.  (See Dkt. 11 at 12 (conceding that "the Complaint does not plead a specific amount of damages")).  Instead, as Defendants argue, "[t]he Complaint does not allege an amount in controversy, an estimated number of putative class members, or other facts from which it can be ascertained from the face of the pleadings that this case is one which is removable."  (Dkt. 1-1, "Scholl Decl.," ¶ 4).  The 30-day window for removal, therefore, does not apply, and the Court concludes that removal was timely.

### B.   Diversity and Exceptions

CAFA requires minimal diversity and that requirement is satisfied here.  *See* 28 U.S.C.A. § 1332(d)(2) ("The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which any member of a class of plaintiffs is a citizen of a State different from any defendant[.]").  Plaintiff argues, however, that the local controversy exception to CAFA's diversity provision applies.[1]  The Court disagrees.

---

[1] Plaintiff states "that both the local controversy and home-state controversy exceptions apply," but discusses only the local controversy exceptions. (Dkt. 11 at 9).  The Court therefore does not address the home-state controversy exception.

In the Ninth Circuit, it is "well-established . . . that the party seeking remand must prove the applicability of such exception[.]"  *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1024 (9th Cir. 2007).  Plaintiff has failed to carry that burden.  Plaintiff states that, under the local controversy exception, there is no CAFA jurisdiction here because (1) "greater than two-thirds of the members of all proposed" Plaintiff class members are California residents; (2) at least one Defendant "from whom significant relief is sought by members of the plaintiff class" is a California citizen, (3) the alleged injuries caused by Defendants occurred in California; and (4) no similar class actions have been filed within the past three years against any of the defendants "asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons."  28 U.S.C.A. § 1332(d)(4)(A) (emphasis added).

A Plaintiff must show all four elements to establish the local controversy exception applies, and Plaintiff here provides little to no support that *any* of the elements are satisfied. As Defendants argue, for example, "Plaintiff does not even attempt to establish that no other similar actions have been filed against Defendants during the three years prior to the filing of this action." (Motion at 6).  The Court concludes, therefore, that the exception does not apply here.

### C.  Amount-in-Controversy

Defendants argue that "even when excluding the theoretical value of Plaintiff's claims for failure to pay overtime wages, failure to timely pay wages during employment, payroll penalties, unreimbursed business

expenses, interest, costs, and PAGA penalties, and assuming only minimal violations as to Plaintiff's remaining claims, the amount in controversy in this lawsuit is at least $46,289,875.50[.]"  (Dkt. 1 ¶ 18) (emphasis omitted). Defendants' calculations are based solely on a Declaration made by Tami Ford, the Human Resources Director at Healthcare Services Group, Inc., the parent company of HCSG West (together, "HCSG").  (Declaration of Tami Ford ("Ford Decl."), Dkt 1-2 ¶ 1).  Without more, however, Defendants' calculations are mere speculation.

The only concrete evidence provided in the Ford Declaration addresses (1) the number of employees who worked for Defendants during the proposed period; (2) how many total weeks were worked; (3) the average hourly wage for those employees; and (4) the number of employees who left HCSG during the relevant period. ("Ford Decl.", Dkt 1-2, ¶ 7-9).  Defendants rely on this sparse data to make a series of assumptions regarding Plaintiff's claims.  As numerous other courts in this Circuit have found, such assumptions do not suffice to calculate the amount-in-controversy requirement for CAFA jurisdiction.  *See, e.g.*, *Weston v. Helmerich & Payne Inter. Drilling Co.*, 2013 WL 5274283, at *6; (E.D. Cal. Sept. 17, 2013) ("Defendant provides no factual underpinning for the assumption that a meal and rest break violation occurred one time per week or why an overtime violation should be presumed to occur for four hours every week."); *Emmons v. Quest Diagnostics Clinical Labs., Inc.*, 2014 WL 584393, at *6 (E.D. Cal. Feb. 12, 2014) ("Defendants conclude that because Plaintiffs allege that all class members were not provided with complete and accurate wage statements, Defendants are entitled to assume the maximum statutory

penalty applies. This, however, is an improper assumption."); *Marshall v. G2 Secure Staff, LLC*, 2014 WL 3506608, at *2 (C.D. Cal. July 14, 2014) ("[P]arties may not rely on the assumption that the 100–percent violation rule applies without supporting the assumption with evidence.").

In assessing the amount in controversy, the Ninth Circuit considers "facts presented in the removal petition as well as any 'summary-judgement-type evidence relevant to the amount in controversy at the time of removal.'" *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003) (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir.1997)).  As Plaintiff points out, "[a]lthough Defendants have unfettered access to every putative class member's employment records, which contain the data necessary to make calculations, Defendants' Notice of Removal does not use any of the evidence within their control to plead a specific amount of damages."  (Dkt. 11 at 12-13).

Defendants need not rebut Plaintiff's argument that Defendants' removal is supported by conjecture by proving the putative class members' damages for them.  *Korn v. Polo Ralph Lauren Corp.*, 536 F.Supp.2d 1199, 1204–05 (E.D. Cal. 2008) (quoting *McCraw v. Lyons*, 863 F. Supp. 430, 434 (W.D. Ky. 1994)).  On the other hand, Defendants cannot meet their own burden in removing the case with only "speculation and conjecture."  *Dupre v. Gen. Motors*, No. CV–10–00955RG K(Ex), 2010 WL 3447082, at *4 (C.D. Cal. Aug.27, 2010) (quoting Lowdermilk, 479 F.3d at 1002).  Here, Defendants' supporting declarations do not support their jurisdictional allegations

United States District Court
Central District of California

factually; the allegations therefore are speculation and conjecture, insufficient to meet Defendants' burden in removing the action.

1.  <u>Wage Statement Penalties</u>

Plaintiff seeks to recover penalties for allegedly non-compliant itemized wage statements.  (*See* Compl. ¶¶ 48-51).  Defendants, assuming a 100% violation rate, claim these alleged violations put $8,094,900 in controversy. (Dkt. 1 ¶ 41).   As explained above, Plaintiff made no such allegation. Instead, Plaintiff pled that "HCSG knowingly and intentionally failed to provide Plaintiff and Class Members with timely, accurate, and itemized wage statements in accordance with California Labor Code § 226(a)." (Compl. ¶ 50).  Plaintiff simply stated that Defendants engaged in a "systematic course of illegal payroll practices and policies[.]"  (Compl. ¶ 14). Defendants justify basing their calculation on 100% violation rate because "[n]one of Plaintiff's broad allegations regarding the 'systematic' wage and hour violations alleged in the Complaint are qualified by any modifying language, such as 'sometimes,' 'occasionally,' 'from time to time,' 'intermittently,' or 'on certain days' that would suggest anything less than a uniform 100% violation rate for all employees."  (Dkt. 14 at 11).  Defendants, in other words, assume a 100% violation rate because Plaintiff did not explicitly say there was *not* a 100% violation rate.

This reasoning is unpersuasive, and Defendants provide no independent evidence to support such an assumption.  Defendants' calculation is based solely on the Ford Declaration, which includes information addressing (1) the number of employees who worked for

United States District Court
Central District of California

Defendants during the proposed period; (2) how many total weeks were worked; (3) the average hourly wage for those employees; and (4) the number of employees who left HCSG during the relevant period. (Ford Decl. ¶ 7-9).  The declaration provides no evidence of a 100% violation rate.

As the Ninth Circuit explained in *Garibay v. Archstone Communities LLC*, 539 F. App'x 763 (9th Cir. 2013), such a declaration standing alone is insufficient to make assumptions about other aspects of the amount-in-controversy calculation, for example, the possible number of wage statement violations.  In *Garibay*, defendants submitted a "declaration by their supervisor of payroll, which set[ ] forth only the number of employees during the relevant period, the number of pay periods, and general information about hourly employee wages.  Beyond this, the defendants rel[ied] on speculative and self-serving assumptions about key unknown variables."  *Id*. at 764.  For example, nothing in the declaration explained why each member of the class would be entitled to recovery for every pay period for inaccurate wage statements.  *See id*.  As Defendants have submitted a similar declaration, the Court finds their "evidence [is] insufficient to support removal jurisdiction under CAFA."  *See id*.

2.   Meal and Rest Period Penalties

Plaintiffs also seek to recover for missed meal and rest periods pursuant to California Labor Codes § 226.7, § 512, and § 512(a).  (*See* Compl. ¶¶ 15-23).  Defendants claim such allegations, combined, put $17,899,608.5 in controversy, assuming one meal period and one rest break violation per week.  (*See* Dkt. 14 at 14).  Defendants' assumption regarding meal and

United States District Court
Central District of California

rest period violations, however, is once again unsupported by any evidence. Defendants assert their assumption is "extremely conservative" because Plaintiff alleges Defendants employed a uniform policy of wage abuse and thus denied class members their meal and rest periods in violation of California law.  (*See* Dkt. 14 at 13).  The Court finds this insufficient to support Defendants' assumption of one meal period and one rest break violation per week.

Even assuming each class member was denied a rest period and a meal period for every shift lasting the requisite length, it is still unclear how many of the total shifts in question were of sufficient length to mandate the provision of meal and rest periods, as "Defendants fail to provide any evidence that is specific to the class members."  (Motion at 14).  As Defendants "provide[ ] no factual underpinning for the assumption that a meal and rest break violation occurred one time per week," the Court finds they have failed to sustain their evidentiary burden for purposes of removal. *See Weston v. Helmerich & Payne Inter. Drilling Co.*, No. 1:13-cv-01092-LJO-JLT, 2013 WL 5274283, at *6 (E.D. Cal. Sept. 17, 2013); *see also Munoz v. Central Parking Sys., Inc.*, 2010 WL 3432239, at *2 (C.D. Cal. Aug. 30, 2010) (dismissing Defendant's assumption of one meal period violation per week because Defendant "fail[ed] to provide ... evidentiary support").

3.   Failure to Pay Minimum Wages

Defendants argue that Plaintiff's claims regarding Defendants' failure to pay minimum wages adds $4,474,703 to the amount in controversy,

12

assuming half an hour of unpaid wages per workweek.  (Dkt 14 at 14).  This calculation is premised, however, on an assumption that defendants failed to pay proper wages to every class member employee during every pay period of the year. Once again, defendants adduce no evidence that would permit the court to draw such an inference, and the Court concludes that Defendants have failed to carry their burden to establish the amount in controversy with respect to the minimum wage claims.

### 4.  Waiting Time Penalties

Plaintiff seeks statutory penalty wages, alleging that class members did not receive all wages, earned and unpaid, within seventy-two hours of their leaving Defendants' employ because Defendants "willfully fail[ed] to pay, in accordance with California Labor Code §§ 201 and 202, any wages of an employee who is discharged or who quit[.]"  (*See* Compl. ¶¶ 38-44). Defendants contend these alleged violations put $12,678,262 in controversy, assuming a 100% violation rate.  (Notice of Removal ¶¶ 37-38.) Even assuming a 100% violation rate is appropriate, the Court has already called into question Defendants' calculations for Meal and Rest Period Penalties, as well as Wage Statement Penalties.  Defendants, therefore, have failed to carry their burden to establish the amount in controversy regarding waiting time penalties.

### 5.  Remaining Employment Claims

Defendants have not addressed Plaintiff's remaining substantive claims in detail, instead assuming Plaintiff's claims regarding Defendants' failure to pay overtime wages, failure to timely pay wages during employment, payroll

13

penalties, unreimbursed business expenses, interest, costs, and PAGA penalties contribute $0 to the amount in controversy.

6.   <u>Attorneys' Fees</u>

Finally, Defendants calculated an amount in controversy for attorneys' fees as 25% of Plaintiff's projected damages.  (Dkt. 1 ¶ 44).  While courts in the Ninth Circuit have considered potential attorneys' fees in calculating the amount in controversy in wage-and-hour cases, Defendants' fees estimate is based on a conjectural damages calculation and should be disregarded. *See Campbell v. Vitran Express, Inc.*, No. CV-10-04442-RGK(SHx), 2010 WL 4971944, at *4 (C.D. Cal. Aug. 16, 2010) ("[B]ecause such uncertainty surrounds Defendant's calculation of damages and penalties, the Court cannot find that the inclusion of a 25% attorneys' fee, which Defendant recommends, would necessarily place the amount in controversy over the $5,000,000 CAFA threshold.").

## IV.   CONCLUSION

Plaintiffs in class actions "may plead conservatively to secure a state forum," as long as those pleadings are made in good faith.  *Lowdermilk*, 479 F.3d at 1003; *Id.* at 998–99.  Plaintiffs are, after all, masters of their own complaints. *Holmes Group, Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 831 (2002).  The Ninth Circuit therefore cautions that courts should "assur[e] that removal occurs once the jurisdictional facts supporting removal are evident," so as to "guard [ ] against premature and protective removals[.]"  *Harris*, 425 F.3d at 698.  Rather than moving ahead, relying largely upon conjecture, Defendants could have waited for evidence that it is

more likely than not that the amount in controversy requirement in this case is satisfied.  *See Abrego Abrego*, 443 F.3d at 691.  Alternatively, as Defendants are in possession of detailed information regarding their employees, Defendants could have reviewed their own records and marshaled more detailed evidence to support their claims regarding the amount in controversy.  At this time, however, the Court finds Defendants fail to satisfy its burden in invoking the Court's jurisdiction.

The Court therefore GRANTS Plaintiff's Motion to Remand and REMANDS the action to the California Superior Court for the County of San Bernardino.

**IT IS SO ORDERED.**

Dated:    4/24/20

Virginia A. Phillips
Chief United States District Judge

15